**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

LSP Transmission Holdings II, LLC, et al.,

   *Plaintiffs*,

   v.

James F. Huston, Chairman, Indiana Utility Regulatory Commission, et al.,

   *Defendants,*

Northern Indiana Public Service Company, et al.,

   *Intervenor-Defendants.*

Case No. 1:24-cv-01722-TWP-MKK

**REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................3

I.     Plaintiffs' Claims Are Justiciable. ...........................................................................3

     A.    Plaintiffs Have Standing to Seek Declaratory and Injunctive Relief.....................3

     B.    The IURC's Mootness and Ripeness Arguments Are Meritless. ...........................4

II.    HEA 1420 Violates The Commerce Clause. ...........................................................7

     A.    HEA 1420 Discriminates Against Interstate Commerce.........................................7

          1.    HEA 1420 discriminates against interstate commerce on its face ...............8

          2.    HEA 1420 discriminates against interstate commerce in its effects ...........11

          3.    HEA 1420 discriminates against interstate commerce in its purpose. ...................................................................................................14

     B.    HEA 1420 Undisputedly Cannot Survive Strict Scrutiny. ...................................17

     C.    Defendants' Other Efforts To Avoid Commerce Clause Scrutiny Fail. ...............17

          1.    Congress did not authorize HEA 1420's blatant discrimination..............17

          2.    *Tracy* does not shield HEA 1420 from Commerce Clause scrutiny..................................................................................................20

III.   This Court Should Issue A Declaratory Judgment And A Permanent Injunction ............23

     A.    A Declaratory Judgment and a Permanent Injunction Are Amply Warranted. ...........................................................................................................23

     B.    The Court Should Reject the IURC's Request for Additional Time to Conduct Discovery. ...............................................................................................24

CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Bacchus Imps., Ltd. v. Dias,*
  468 U.S. 263 (1984) ........................................................................................................ 14

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,*
  476 U.S. 573 (1986) ........................................................................................................ 13

*C & A Carbone, Inc. v. Town of Clarkstown,*
  511 U.S. 383 (1994) ........................................................................................................ 10

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
  520 U.S. 564 (1997) ........................................................................................................ 22

*City of Philadelphia v. New Jersey,*
  437 U.S. 617 (1978) ........................................................................................................ 17

*Colon Health Ctr. of Am., LLC v. Hazel,*
  813 F.3d 145 (4th Cir. 2016) ............................................................................................ 9

*Coomes v. Republic Airways Inc.,*
  2021 WL 1165183 (S.D. Ind. Mar. 26, 2021) ............................................................... 24

*Cotton Petroleum Corp. v. New Mexico,*
  490 U.S. 163 (1989) ........................................................................................................ 19

*Dean Milk Co. v. City of Madison,*
  340 U.S. 349 (1951) ........................................................................................................ 10

*Elec. Power Supply Ass'n v. Star,*
  904 F.3d 518 (7th Cir. 2018) ..................................................................................... 19, 20

*Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.,*
  504 U.S. 353 (1992) ........................................................................................................ 10

*Gen. Motors Corp. v. Tracy,*
  519 U.S. 278 (1997) ........................................................................................................ 20

*Granholm v. Heald,*
  544 U.S. 460 (2005) ............................................................................................... 1, 11, 13

*Green v. Mansour,*
  474 U.S. 64 (1985) .......................................................................................................... 23

*Killian v. Concert Health Plan,*
  742 F.3d 651 (7th Cir. 2013) ........................................................................................ 5, 7

*Lewis v. BT Inv. Managers, Inc.*,
 447 U.S. 27 (1980) ................................................................................ 8, 10

*LSP Transmission Holdings II, LLC v. Huston*,
 131 F.4th 566 (7th Cir. 2025) .................................................................. *passim*

*LSP Transmission Holdings, LLC v. Sieben*,
 954 F.3d 1018 (8th Cir. 2020) ................................................................ 8

*Maine v. Taylor*,
 477 U.S. 131 (1986) ................................................................................ 17

*Merrion v. Jicarilla Apache Tribe*,
 455 U.S. 130 (1982) ................................................................................ 18, 19

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*,
 708 F.3d 921 (7th Cir. 2013) ................................................................... 5

*Nat'l Pork Producers Council v. Ross*,
 598 U.S. 356 (2023) ................................................................................ 13

*New Eng. Power Co. v. New Hampshire*,
 455 U.S. 331 (1982) ................................................................................ 17

*NextEra Energy Cap. Holdings, Inc. v. Jackson*,
 756 F. Supp. 3d 428 (W.D. Tex. 2024) .................................................. 4, 17

*NextEra Energy Cap. Holdings, Inc. v. Lake*,
 48 F.4th 306 (5th Cir. 2022) ................................................................... *passim*

*Norfolk S. Corp. v. Oberly*,
 822 F.2d 388 (3d Cir. 1987) .................................................................... 9

*Park Pet Shop, Inc. v. City of Chicago*,
 872 F.3d 495 (7th Cir. 2017) ................................................................... 12, 13

*Peick v. Pension Benefit Guar. Corp.*,
 724 F.2d 1247 (7th Cir. 1983) ................................................................. 3

*Poor Richard's Inc. v. Ramsey Cnty.*,
 922 F.Supp. 1387 (D. Minn. 1996) ......................................................... 1

*Regan v. City of Hammond*,
 934 F.3d 700 (7th Cir. 2019) ................................................................... 12, 13, 14

*S.C. Pub. Serv. Auth. v. FERC*,
 762 F.3d 41 (D.C. Cir. 2014) .................................................................. 16

*S.-Cent. Timber Dev., Inc. v. Wunnicke,*
 467 U.S. 82 (1984) .................................................................................................... 19

*Siegel v. Shell Oil Co.,*
 612 F.3d 932 (7th Cir. 2010) ..................................................................................... 6

*Smith v. OSF HealthCare Sys.,*
 933 F.3d 859 (7th Cir. 2019) ................................................................................... 25

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas,*
 588 U.S. 504 (2019) ................................................................................................... 7

*West Virginia v. EPA,*
 597 U.S. 697 (2022) ................................................................................................... 7

*White v. Decker,*
 2025 WL 2625313 (S.D. Ind. Sept. 11, 2025) ....................................................... 25

*White v. Mass. Council of Constr. Emps., Inc.,*
 460 U.S. 204 (1983) ................................................................................................. 18

*Wyoming v. Oklahoma,*
 502 U.S. 437 (1992) ............................................................................................ 2, 17

**Constitutional Provision**

U.S. Const. art VI, cl.2 ................................................................................................. 15

**Statutes**

16 U.S.C. §824(b)(1) .................................................................................................... 17

16 U.S.C. §824d ........................................................................................................... 23

Ind. Code §8-1-38-2 ..................................................................................................... 15

Ind. Code §8-1-38-4 ..................................................................................................... 16

Ind. Code §8-1-38-7 ..................................................................................................... 16

Ind. Code §8-1-38-9 ..................................................................................................... 20

**Other Authorities**

*Midwest Indep. Transmission Sys. Operator, Inc.,*
 147 FERC ¶61,127 (2014) ....................................................................................... 18

*Midwest Indep. Transmission Sys. Operator, Inc.,*
 150 FERC ¶61,037 (2015) ....................................................................................... 18

MISO, *MTEP Chapter 2 – Regional Long Range Transmission Planning*, https://perma.cc/4BJN-EBP6 ................................................................................................ 6

Order No. 1000, 136 FERC ¶61,051 (2011) ............................................................................ 21

PJM Transmission Expansion Advisory Committee, *Reliability Analysis Update* (Nov. 4, 2025), https://perma.cc/8H6P-8THS ............................................................. 6

SPP, *Competitive Upgrade Transmission Project Report* (Nov. 5, 2024), https://perma.cc/MS9N-DL3N ........................................................... 4

## INTRODUCTION

Defendants offer no valid reason for this Court to depart from its prior assessment of the merits of this case, *see* Dkt.70 ("PI Op.") at 15-19, which accords with the views of the Fifth Circuit and the only Seventh Circuit judge who has considered the merits. Indiana House Enrolled Act 1420 of 2023 ("HEA 1420") facially discriminates against interstate commerce by giving all new regional transmission projects to public utilities that already own "electric transmission facilit[ies] in whole or in part *in Indiana*," to the detriment of would-be competitors from outside the state. Ind. Code §8-1-38-2 (emphasis added). It is equally clear that HEA 1420's "effect is to favor in-state economic interests over out-of-state interests." *Granholm v. Heald*, 544 U.S. 460, 487 (2005). Illustrating as much, MISO recently relied on HEA 1420 to assign all 55 of the LTRP Tranche 2.1 facilities in its Indiana footprint—collectively valued at approximately $1 billion—to a small group of Indiana firms that epitomize in-state economic interests.[1] SOF ¶49. That is no accident, as HEA 1420 was plainly motivated by economic protectionism: It is the product of extensive lobbying by Indiana's investor-owned electric utilities, four of which have intervened in this litigation to defend their "legislative solution" to increased out-of-state competition. SOF ¶32. For each of these reasons, the statute triggers strict scrutiny—which it undisputedly cannot survive.

Despite submitting 75 pages of opposition briefing, Defendants have no persuasive response. At the threshold, the IURC asserts that any challenge to HEA 1420 is unripe until MISO or PJM announces a specific project that the statute will insulate from competition, and that the challenge becomes moot as soon as the project is assigned to an incumbent. This Court should reject that remarkable attempt to insulate HEA 1420 from judicial review. This case is plainly

---

[1] "MISO," "PJM," "Defendants," "IURC," "Incumbents," "ComEd Indiana," "SOF," and all other terms and acronyms defined in Plaintiffs' opening brief carry the same meaning in this brief.

ripe—indeed, Plaintiffs have *already* been injured—and Defendants fail to carry their heavy burden of establishing that the Court cannot grant Plaintiffs any effectual relief.

On the merits, Defendants largely rehash their legal arguments from the preliminary-injunction stage—e.g., that HEA 1420's incumbency requirement "is unrelated to physical presence in Indiana," Dkt.198 ("Incumbents' Br.") at 24, and that incumbents are not "similarly situated" to the non-incumbents seeking to compete with them, Dkt.201 ("IURC Br.") at 12-14. This Court should reject those arguments for the reasons it gave in its prior opinion. The Court should also reject Defendants' contention that the Federal Power Act's savings clause, 16 U.S.C. §824(b)(1), authorizes states to discriminate against interstate commerce. The Supreme Court has squarely held that §824(b)(1) does not "alter the limits of state power otherwise imposed by the Commerce Clause." *Wyoming v. Oklahoma*, 502 U.S. 437, 458 (1992). Congress has not empowered FERC to authorize state conduct that would otherwise violate the Commerce Clause, and FERC has expressly disavowed any claim to have exercised such authority.

Finally, this Court should reject Defendants' efforts to further delay final judgment while they continue to reap the benefits of HEA 1420's unconstitutional scheme. There is absolutely no need for additional briefing on remedies. Plaintiffs have clearly established their entitlement to declaratory and injunctive relief, and Defendants have had a full and fair opportunity—and then some—to litigate these issues. Moreover, the IURC's half-hearted invocation of Rule 56(d) is both procedurally improper and meritless. Defendants have no legitimate gripe about being "unable to pursue full discovery," IURC Br.28, given that *they* procured a stay of discovery over Plaintiffs' objection. In any event, no amount of discovery could create a genuine dispute of material fact. With new regional transmission projects in Indiana just around the corner, this Court should hold HEA 1420 unconstitutional once and for all.

# ARGUMENT

## I.     Plaintiffs' Claims Are Justiciable.

### A.     Plaintiffs Have Standing to Seek Declaratory and Injunctive Relief.

As this Court previously held, HEA 1420 harms Plaintiffs by preventing them from "compet[ing] on an equal footing" for new regional transmission projects in Indiana.  PI Op.11. Plaintiffs' competitive injuries are now undeniable.  Defendants concede that HEA 1420 has already injured Plaintiffs by depriving them of the opportunity to compete for the new Indiana projects in MISO's LRTP Tranche 2.1.  *See, e.g.*, IURC Br.9; Dkt.176 at 13-14.  And as long as HEA 1420 remains in force, Plaintiffs will repeatedly suffer the injury of being blocked from competing for future regional transmission projects in Indiana, the next group of which is expected to be approved by PJM in early 2026.  *See, e.g.*, Dkt.166 ¶25, Dkt.185 at 4.  This injury "is 'fairly traceable' to the … statute being challenged," *Peick v. Pension Benefit Guar. Corp.*, 724 F.2d 1247, 1258 (7th Cir. 1983), because "[i]f the right of first refusal conferred by HEA 1420 did not exist, MISO would award its new projects through a competitive process in which LSP could participate," PI Op.11, as would PJM.  Plaintiffs' injury is also redressable by a final judgment declaring HEA 1420 unconstitutional, as it is now undeniable that a final judgment would prevent MISO and PJM from giving effect to—and Incumbents from availing themselves of—the anticompetitive rights that HEA 1420 creates.  *See* Dkt.154 at 22-33.  MISO has expressly stated that its tariff would "preclude it from giving any effect to HEA 1420 if a federal court were to issue a final judgment on the merits declaring th[e] law unconstitutional." Dkt.154 at 22.  PJM's tariff would do the same.  *See* Dkt.167-2 §1.5.8(*l*).[2]

---

[2] In fact, Plaintiffs are not aware of *any* ISO disregarding a judgment that a state right-of-first-refusal law is invalid.  Notably, when a federal court held Texas' right-of-first-refusal law unconstitutional just last year, the relevant ISO—the Southwest Power Pool—responded by

## B.    The IURC's Mootness and Ripeness Arguments Are Meritless.

Despite all of that, the IURC asserts that this case is not justiciable, supposedly because the LRTP Tranche 2.1 assignments are irrevocable and PJM and MISO have not yet settled on the details of the new Indiana projects slated for approval in early 2026 and beyond.  This Court should reject that crabbed view of its jurisdiction, under which Plaintiffs' challenge to HEA 1420 would become "ripe" mere weeks before MISO or PJM approves new projects and would become "moot" immediately thereafter, effectively foreclosing judicial review altogether.

This lawsuit has always been about HEA 1420 unconstitutionally restricting competition for *all* regionally planned transmission projects in Indiana.  Naturally, Plaintiffs' motion for a *preliminary injunction* focused on MISO's LRTP Tranche 2.1, as those projects were slated for approval (and ultimately approved) less than three months after this suit was filed.  *See* Dkt.3 ¶5; Dkt.5 at 2-3.  But that was no one-and-done event; it is undisputed that "MISO and PJM are each planning billions of dollars of investment in regional power transmission systems over the next several years."  SOF ¶51.  That is precisely why Plaintiffs' complaint expressly seeks relief with respect to *all* future projects in *both* the MISO and PJM portions of Indiana, not just the particular projects that were at issue in Tranche 2.1.  *See* Dkt.3 ¶¶2-3, 9, 12, 29, 51-56, 58, 64-65.  And there are no "prudential" reasons that would justify continuing to delay resolution of this lawsuit.  So long as HEA 1420 remains in effect, LSP is completely barred from competing for new regional transmission projects in Indiana.  And, in light of the Seventh Circuit's preliminary-injunction ruling, only a final judgment will prevent further constitutional violations and irreparable harm to Plaintiffs and consumers of electricity across MISO's and PJM's multistate regions.  Delay, by

---

ignoring the Texas law and opening the relevant project to competition. *See NextEra Energy Cap. Holdings, Inc. v. Jackson*, 756 F. Supp. 3d 428 (W.D. Tex. 2024); SPP, *Competitive Upgrade Transmission Project Report* (Nov. 5, 2024), https://perma.cc/MS9N-DL3N.

contrast, would accomplish nothing but to continue to allow Incumbents to invoke anticompetitive rights that Indiana has given them in violation of the Constitution.

In arguing otherwise, the IURC ignores important distinctions between standing and mootness. *See* IURC Br.9-11. "Standing is evaluated at the time suit is filed." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 928 (7th Cir. 2013). Because Plaintiffs unquestionably (and undisputedly) established an injury-in-fact when they filed their complaint (an injury that continues to this day), it is now the IURC's burden to demonstrate mootness. *Killian v. Concert Health Plan*, 742 F.3d 651, 660 (7th Cir. 2013). That burden "is a heavy one"; a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (emphasis omitted). To make that showing, Defendants would need to establish that there will *never* be *any other* regional transmission projects for which Plaintiffs would be able to compete but for HEA 1420. They have not even tried to make that showing, because they cannot. Indeed, Incumbents would have no reason to continue litigating this case so vigorously if they did not expect to reap additional no-bid contracts in the coming years.

The IURC next asserts that any injury from forthcoming projects is "speculative" and was "not raised in [Plaintiffs'] complaint." IURC Br.10. Wrong on both counts. First, as noted above, the complaint repeatedly alleges that HEA 1420 will harm Plaintiffs by "foreclos[ing]" them "from competing for MISO *and PJM* … projects" in Indiana. Dkt.3 ¶¶64-65 (emphasis added); *see also, e.g.*, Dkt.3 ¶¶2-3, 9, 12, 29, 51-56, 58. The IURC inexplicably ignores these detailed allegations. Second, the prospect that HEA 1420 will freeze Plaintiffs out of future MISO and PJM projects is not remotely "speculative." It is undisputed that both MISO and PJM are planning billions of dollars of investment in regional power transmission systems in the coming years. SOF ¶51. The IURC's suggestion that none of this will involve new transmission projects in Indiana that are

5

covered by HEA 1420—particularly when the last round of investment involved many such projects, *see* Dkt.167-21—is fanciful.  Indeed, if that were the case, it would be hard to see why the IURC even cares if this law stands.

What is more, Plaintiffs have supplied uncontroverted evidence that LSP entities are currently competing for new business in PJM.  Dkt.166 ¶25.  Per its latest update, PJM is actively considering an Indiana project proposed by Plaintiff Central Transmission, LLC (along with several other Indiana proposals by non-incumbents).  *See* PJM Transmission Expansion Advisory Committee, *Reliability Analysis Update* at 105, 294-95 (Nov. 4, 2025), https://perma.cc/8H6P-8THS (CNTLTM proposal #672).  So long as HEA 1420 is in effect, however, Central Transmission cannot be assigned *its own proposal* even if PJM selects it.  As for MISO, uncontroverted evidence shows substantial planned investment in LRTP Tranche 2.2, which focuses on the same sub-region as Tranche 2.1.  Dkt.167-23 at 3.  MISO continues to "analyze the needs in the Midwest," and its "indicative roadmap" shows future projects in Indiana.  MISO, *MTEP Chapter 2 – Regional Long Range Transmission Planning* at 4, 7, https://perma.cc/4BJN-EBP6 (last visited Nov. 13, 2025).  The Court does not need the precise details of these projects (which likely will not be available until just weeks before project approval) to conclude that Plaintiffs would benefit from a judgment holding HEA 1420 unconstitutional.  *See* PI Op.10.[3]

---

[3] It does not matter whether "[f]ew projects are even subject to" Order No. 1000's competitive-bidding requirements, as the IURC claims.  IURC Br.8.  Standing does not turn on the relative proportion of new projects that would be covered by HEA 1420; Plaintiffs just need to show that HEA 1420 deprives them of the opportunity to compete for at least one project.  The enactment has already blocked them from competing for several projects, including three large projects valued at over $300 million *each*, Dkt.167-21 at Tab 33, and there is no genuine dispute that at least *some* upcoming PJM and MISO projects would be open to competitive bidding but for HEA 1420.  The IURC's efforts to raise "metaphysical doubt" on this score are woefully insufficient to deprive this Court of jurisdiction or render the dispute unripe.  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

Nor can the IURC avoid its heavy burden to demonstrate mootness by framing the issue in terms of ripeness. *See West Virginia v. EPA*, 597 U.S. 697, 719 (2022) ("It is the doctrine of *mootness*, not standing, that addresses whether an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit." (quotation marks omitted)); IURC Br.11 (citing standing cases rather than mootness cases). Plaintiffs' injuries are not "contingent future events that may not occur as anticipated, or indeed may not occur at all," IURC Br.10; their injury has *already occurred* and unquestionably *will recur* each time MISO or PJM approves a new Order No. 1000 project in Indiana. Indeed, Indiana passed HEA 1420 precisely because it recognized that this is a recurring issue. Because holding HEA 1420 unconstitutional would plainly "make a difference to the legal interests of the parties" with respect to future regional transmission projects in Indiana, this case is justiciable. *Killian*, 742 F.3d at 661.

## II.    HEA 1420 Violates The Commerce Clause.

### A.    HEA 1420 Discriminates Against Interstate Commerce.

As Plaintiffs have explained, HEA 1420 discriminates against interstate commerce three times over. *See* Dkt.165 ("Mot.") at 19-25. First, it discriminates against out-of-state interests on its face because it imposes exactly the kind of local-presence requirement that the Supreme Court has time and again invalidated. *See* PI Op.16-17; *LSP Transmission Holdings II, LLC v. Huston*, 131 F.4th 566, 591 (7th Cir. 2025) (Scudder, J., dissenting). Indeed, it is worse than the laws the Supreme Court invalidated in *Granholm* and *Tennessee Wine and Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019). While those laws at least allowed out-of-state competitors to establish in-state operations, HEA 1420 totally excludes out-of-staters except in the rare (if not illusory) circumstance in which an incumbent declines to exercise its ROFR. *See* PI Op.16-19; *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 324-25 (5th Cir. 2022). Second, HEA 1420 discriminates against interstate commerce in its effects. HEA 1420 was enacted at the behest

of a small cadre of Indiana firms and guarantees that virtually every new regional transmission project in Indiana will be handed to an Indiana firm without any out-of-state competition. *See* SOF ¶¶12-24, 47-49. And third, HEA 1420 discriminates against interstate commerce in its purpose—which was to give new transmission projects to "Hoosiers we know," as opposed to companies from "somewhere else." SOF ¶36. Defendants' contrary arguments are meritless.

### 1. HEA 1420 discriminates against interstate commerce on its face.

As this Court held at the preliminary-injunction stage, HEA 1420 is a paradigmatic local-presence requirement forbidden by Supreme Court precedent. In reaching that conclusion, this Court correctly rejected Defendants' argument that incumbency is not a proxy for local presence. PI Op.17-19. Across their three briefs, Defendants spend a combined 14 pages rehashing that same, purely legal argument—but to no better effect. Dkts.201 at 16-19; 200 at 10-15; 198 at 23-27. And, notably, Defendants do not even try to manufacture a *factual* dispute on this issue.

HEA 1420's discrimination against interstate commerce is "express on the statute's face": "HEA 1420 defines 'incumbent' as a 'public utility that owns, operates, and maintains an electric transmission facility *in whole or in part in Indiana.*'" *LSP*, 131 F.4th at 591 (Scudder, J., dissenting). Because the statute "concerns property ownership in the state, it expressly mandates differential treatment of in-state and out-of-state economic interests that benefits owners of transmission facilities in Indiana and burdens owners of transmission facilities outside of Indiana." PI Op.16. "Limiting competition based on the existence or extent of a business's local foothold is the protectionism that the Commerce Clause guards against." *Id.* (quoting *NextEra*, 48 F.4th at 326); *accord Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 42 n.9 (1980).

In arguing otherwise, Defendants lean heavily on a single out-of-circuit decision—*LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018 (8th Cir. 2020). *See* Incumbents' Br.18, 23-24; IURC Br.18-19; Dkt.200 ("ComEd Br.") at 11-12. Plaintiffs have already explained why

*Sieben* is a misguided outlier, Dkt.58 at 12-15, and this Court has already rejected *Sieben* because "the Fifth Circuit's reasoning in [*NextEra* is] more persuasive," PI Op.18; *accord LSP*, 131 F.4th at 592 (Scudder, J., dissenting). Defendants' continued reliance on *Colon Health Centers of America, LLC v. Hazel*, 813 F.3d 145 (4th Cir. 2016), and *Norfolk Southern Corp. v. Oberly*, 822 F.2d 388 (3d Cir. 1987), is likewise misplaced. As Plaintiffs explained at the preliminary-injunction stage, neither case provides any support for a blanket rule that "incumbency" can never be a proxy for in-state status; in fact, both cases involved *facially neutral* laws. *See* Dkt.58 at 14-15. Here, by contrast, HEA 1420's incumbency requirement is *facially discriminatory*—"a more anticompetitive version of the in-state presence requirements held unconstitutional in cases like *Granholm* or *Dean Milk.*" *NextEra*, 48 F.4th at 325.

Defendants' efforts to distinguish *NextEra* are unavailing. The fact that the Texas law in *NextEra* "bann[ed] new entrants outright," whereas HEA 1420 would allow competition "whenever the relevant incumbent utility declines to exercise its ROFR," Incumbents' Br.27, does not make HEA 1420 any less facially discriminatory. Both statutes confer exclusive rights on those with an in-state presence, to the detriment of all those without such a presence. As Judge Scudder aptly put it, "while the Fifth Circuit confronted a different statutory scheme, the principles guiding its reasoning apply with full force to HEA 1420." *LSP*, 131 F.4th at 592.

Defendants nevertheless argue for a utilities exemption from Commerce Clause scrutiny. They attempt to distinguish *Granholm* and *Tennessee Wine* on the theory that HEA 1420's protectionism "stem[s] from the unique nature of utility regulation," Incumbents' Br.26-27, which supposedly makes it a "matter of physics" and not a "*gratuitous* physical presence requirement," ComEd Br.14-15. But nothing about the nature of regional transmission dictates that new lines

must be built by in-state incumbents.[4]  To the contrary, FERC has determined that regional transmission projects should generally be open to interstate competition, and only a handful of states block such competition.  SOF ¶44.  Defendants' insistence that new interstate-transmission projects should be built by the owner of existing in-state infrastructure is a version of the same argument available "[i]n almost any Commerce Clause case"—i.e., that the state has "an interest in bolstering local ownership, or wealth, or control of business enterprise." *Lewis*, 447 U.S. at 43-44.  By the same token, the favored local waste processor in *C & A Carbone, Inc. v. Town of Clarkstown* could have argued that it is just "a matter of physics" that, to process waste at a designated, local transfer station, that waste must be routed there "before it leaves the town."  511 U.S. 383, 390-92 (1994).  Defendants' argument is not really about whether HEA 1420's physical-presence requirement is discriminatory; it is an attempt to justify that discrimination, which is properly considered (and rejected) under strict scrutiny.

Finally, Defendants suggest that HEA 1420 is not facially discriminatory because incumbency is an imperfect proxy for in-state interests.  IURC Br.17, 19-20; Incumbents' Br.23-24; ComEd Br.12-15.  As this Court already held, that argument is squarely foreclosed by Supreme Court precedent.  PI Op.17.  A state law that facially discriminates against out-of-state interests triggers strict Commerce Clause scrutiny even if it also discriminates against some in-state interests.  *See, e.g.*, *C & A Carbone*, 511 U.S. at 391; *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.*, 504 U.S. 353, 361 (1992); *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 n.4 (1951).  ComEd Indiana asserts that HEA 1420 also grants a preference to some *out-of-state* interests, noting that it fits the statute's definition of "incumbent" even though it "do[es] not serve

---

[4] If it were truly a "matter of physics" that Incumbents must get first dibs on new projects, one would expect HEA 1420 to *require* that Incumbents exercise their ROFR.  As noted, it does not.

Indiana interests in any meaningful sense." ComEd Br.13. Like the handful of other out-of-state interests that happen to have a small toehold in Indiana (including Plaintiffs' affiliate, Republic), however, ComEd Indiana is overwhelmingly *disadvantaged by* HEA 1420, as the statute bars it from competing for all new projects in Indiana unless one of them happens to connect to its lone substation near the Indiana-Illinois border. *See* SOF ¶24. The fact that HEA 1420 reserves new business for *Indiana's* investor-owned utilities while barring competition from a potential competitor that "serves millions of *Illinois* retail customers," ComEd Br.13 (emphasis added), just underscores that HEA 1420's incumbency requirement is a proxy for in-state economic interests.[5]

### 2.    HEA 1420 discriminates against interstate commerce in its effects.

Even if HEA 1420 could be considered facially neutral, it would still trigger strict scrutiny because its obvious "effect is to favor in-state economic interests over out-of-state interests." *Granholm*, 544 U.S. at 487. It is undisputed that the vast majority of electric transmission lines and transmission substations in Indiana are controlled by Indiana's five investor-owned utilities and that three other Indiana entities own almost all the rest. SOF ¶¶12-24; *accord* Incumbents' Br.20. These eight Indiana firms plainly represent in-state economic interests for purposes of the Commerce Clause analysis. *See* Mot.23-24; *accord* Dkt.51 at 10 (Incumbents describing themselves as "Indiana-based vertically integrated public utilit[ies]"). By giving these firms an exclusive right to build, own, and maintain virtually all new regional transmission projects in Indiana, HEA 1420 strongly favors in-state economic interests over out-of-state interests. MISO's assignment of LRTP Tranche 2.1 illustrates as much: Relying on HEA 1420, MISO assigned all

---

[5] As Plaintiffs explained when ComEd Indiana first sought to become involved in this litigation, ComEd Indiana appears to have sided with Incumbents—even though HEA 1420 largely freezes it out of Indiana—because it wishes to "secur[e] a favorable Seventh Circuit precedent in hopes that" its Illinois-based parent company "will succeed in convincing the Illinois legislature to pass a similar right-of-first-refusal law." Dkt.97 at 2. An Illinois ROFR law would be a huge boon for Commonwealth Edison, as it is the largest electric utility in Illinois. *Id.* at 3.

55 of the facilities in its Indiana footprint to these eight Indiana firms without competition.  SOF ¶49.  The statute's discriminatory effects could hardly be clearer.

Defendants have very little to say in response.  Incumbents largely ignore the issue, incorrectly asserting that "Plaintiffs' sole claim" is "facial[] discriminat[ion]."  Incumbents' Br.23. *But see* Mot.23-24 (arguing for strict scrutiny based on discriminatory effects).  ComEd Indiana's brief does not address discriminatory effects at all.  *See* ComEd Br.15 n.3.  As for the IURC, it begins by reprising its argument that "HEA 1420 does not make a distinction between in-state and out-of-state transmission companies, but between the owner of a facility to be connected to or upgraded and everyone else."  IURC Br.19.  That argument fares no better the second time around. Regardless of whether HEA 1420 *facially* discriminates against in-state and out-of-state companies (which it does), the statute's inevitable *effect* is to privilege eight Indiana firms over all would-be competitors from outside the state.  Moreover, "the Supreme Court has consistently held that it is immaterial that some in-state businesses are subject to the proscriptions of a discriminatory statute."  PI Op.17.  While NIPSCO's exercise of a ROFR for a new project in northern Indiana might disadvantage both a "southern Indiana company" and a "Florida company," IURC Br.19-20, the net effect of HEA 1420 is to give nearly every new project to an Indiana company while barring all out-of-state competition.  That is protectionism, plain and simple.

Plucking an isolated phrase out of Seventh Circuit caselaw, Defendants argue that "[t]he effect of HEA 1420 is … not so powerful that it creates an 'embargo on interstate commerce.'" IURC Br.20 (quoting *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017)); *see* Incumbents' Br.28 (citing *Regan v. City of Hammond*, 934 F.3d 700, 703 (7th Cir. 2019)).  But that same caselaw makes clear that a finding of discriminatory effects does not require a total blockade of interstate commerce; to the contrary, the cases hold that a law has discriminatory

effects if it "bear[s] more heavily on interstate commerce than on local commerce." *Pet Park Shop*, 872 F.3d at 501; *Regan*, 934 F.3d at 703. And rightly so, as the Supreme Court has held that a state statute triggers strict scrutiny "when its effect is to favor in-state economic interests over out-of-state interests," without requiring a total embargo. *Granholm*, 544 U.S. at 487 (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)); *see also Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 377 (2023) (reaffirming that "a law's practical effects may also disclose the presence of a discriminatory purpose"). Having conceded that "the vast majority of the endpoint facilities that HEA 1420 covers are owned, operated and maintained by a small group of vertically integrated [Indiana] utilities," Incumbents' Br.22, Defendants cannot seriously dispute that HEA 1420 favors in-state economic interests. In all events, HEA 1420's right-of-first-refusal regime *is* effectively an embargo on interstate commerce, as it blocks all out-of-state competition except in the exceedingly unlikely event that an incumbent decides to forgo a competition-free business opportunity.

For similar reasons, Defendants fail to raise a genuine dispute of material fact regarding HEA 1420's discriminatory effects. Defendants purport to dispute whether "HEA 1420 ensures that almost all new regional transmission projects in Indiana will go to an in-state entity, without out-of-state competition." Incumbents' Br.8 (quoting SOF ¶47); *see* IURC Br.7. But whether "HEA 1420 draws a distinction based on ownership, rather than in-state status," IURC Br.7; *see* Incumbents' Br.8, is a legal issue (discussed above), not a factual one. There is no *factual* dispute that HEA 1420's *effect* is to give billions of dollars' worth in competition-free business to a handful of favored Indiana companies. That is why "a small group" of Indiana utilities lobbied so hard to get HEA 1420 enacted and why they have intervened to defend it so vigorously. *See* Incumbents' Br.22. Tellingly, Defendants do not dispute that *all 55* of the Tranche 2.1 projects in MISO's

Indiana footprint were assigned to Indiana companies pursuant to HEA 1420.  Nor do they offer any reason to think that assignments of future projects would be any less one-sided.

There is likewise no genuine dispute about "the frequency with which the right of first refusal may or may not be exercised by an incumbent."  IURC Br.7.  Incumbents undisputedly "intend to exercise ROFRs for all Tranche 2.1 facilities in Indiana," SOF ¶50, and Plaintiffs have submitted letters from I&M and IMPA stating that they likewise intend to exercise their ROFRs across the board, Dkt.167-22 at 5-6.  That comes as no surprise, given the strong economic incentive to accept competition-free projects worth millions of dollars.  Tellingly, when pressed by this Court at the preliminary-injunction hearing, Defendants could not identify a single instance in which *any* company has declined to exercise a ROFR for a regional transmission project.  Dkt.64 at 16:18-25; *see also* Dkt.64 at 50:12-16 (Plaintiffs' counsel:  "[W]e're not aware of any instance when that has ever happened in Indiana or elsewhere.").  In any event, even if this purported dispute were genuine, it is not material.  As noted, a law discriminates in its effects if it "bear[s] more heavily on interstate than local commerce."  *E.g.*, *Regan*, 934 F.3d at 703.  Even assuming incumbents occasionally decline a project (contrary to their economic incentives and all record evidence), HEA 1420 would still have strong discriminatory effects against interstate commerce.

### 3.    HEA 1420 discriminates against interstate commerce in its purpose.

"A finding that state legislation constitutes 'economic protectionism' may [also] be made on the basis of … discriminatory purpose."  *Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 270-71 (1984).  Here, the statute's text, effects, and context all point in the same direction:  HEA 1420 was enacted for the express purpose of insulating "Hoosiers" from out-of-state competition.  HEA 1420 was passed shortly after MISO began awarding competitive transmission projects in Indiana to transmission developers with no previous in-state presence, and it reflected Incumbents' efforts to obtain "a legislative solution … for future projects."  SOF ¶32.

14

Defendants' arguments to the contrary do not move the needle. Incumbents assert that "nothing in the statutory language" suggests a discriminatory purpose. Incumbents' Br.28. Nonsense: The statute grants valuable new projects to companies based solely on the extent of their existing presence "in Indiana." Ind. Code §8-1-38-2. And, as explained, HEA 1420's foreseeable (and already-seen) effect is to privilege a small group of powerful Indiana firms. *See supra* pp.11-14. Plaintiffs thus do not and need not rely solely on legislators' statements during the public debates over HEA 1420. *Contra* Incumbents' Br.28. The damning admissions about favoring "Hoosiers we know" simply reinforce what is already obvious: When Incumbents were forced to compete and started losing business to out-of-state companies, they lobbied the Indiana legislature for a "solution" and were rewarded with HEA 1420. *See* SOF ¶¶25-47. And the IURC's assertion that the Court may not consider these statements because *Indiana* law does not permit the use of legislative history in determining a legislature's motive, IURC Br.23-24, is unavailing. *Federal* law directs the Court to consider such evidence in determining whether a state law discriminates against interstate commerce in its purpose, and state law cannot constrain the application of federal constitutional doctrine. *See* U.S. Const. art VI, cl.2.

Next, Defendants posit various rationales for HEA 1420 (and for Incumbents' lobbying efforts) that are supposedly unrelated to protectionism. None withstands scrutiny. For starters, Defendants' ever-shifting account of HEA 1420's purpose belies their efforts to pass it off as benign. Defendants have previously adverted to cost and delay as reasons to bar competition, before settling on the three new rationales discussed below. ComEd Indiana—and only ComEd Indiana—still clings to the theory that HEA 1420 "eliminates the years of delay that can accompany the competitive process," ComEd Br.2—a theory that is refuted by FERC's policy rationales for issuing Order No. 1000.

Even taking Defendants' current rationales at face value, they are unpersuasive. First, Congress assuredly has *not* authorized states to enact right-of-first refusal legislation. *See infra* pp.17-20. Nor does HEA 1420 further Indiana's "franchise model," which is relevant only to a retail market that HEA 1420 does not regulate. HEA 1420 regulates *interstate* transmission, and the preference it provides is not limited to vertically integrated utilities serving an *intrastate* retail market. *See infra* pp.21-22. Second, Incumbents' argument that they supported HEA 1420 to "maintain[] the IURC's plenary supervision of the State's utilities," Incumbents' Br.29, is impossible to square with the IURC's submission—which enabled Defendants to prevail on their PI appeal—that it plays no role whatever in enforcing HEA 1420. *See, e.g.*, IURC Br.11. It is also impossible to square with the fact that the IURC exercises the same supervision over and applies the same state laws to *any* entity that builds and maintains a transmission line, whether that entity is a vertically integrated utility like Incumbents or a transmission-only entity like Republic. SOF ¶27; *see* Ind. Code §§8-1-38-4, -7. Third, and similarly, Indiana's "longstanding state authority over … siting, permitting, and construction," IURC Br.24, does not supersede FERC's jurisdiction over *interstate* transmission. *See, e.g.*, *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 49 (D.C. Cir. 2014) (per curiam). And, again, any authority the IURC does exercise in this area applies equally to any entity that constructs and maintains a transmission facility in Indiana. Finally, while reliability is surely an important aspect of interstate transmission, that is precisely why MISO and PJM already consider it in their competitive processes—which is how Order No. 1000 says those concerns should be addressed. *See* Mot.5-6. In sum, Defendants have no cogent explanation (let alone evidence) suggesting that HEA 1420 was enacted for any reason other than "giving a priority" to "Hoosiers we know." SOF ¶¶34-36.

**B.      HEA 1420 Undisputedly Cannot Survive Strict Scrutiny.**

State laws that discriminate against out-of-state interests are subject to the strictest form of scrutiny:  a "virtually *per se* rule of invalidity."  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).  Defendants have never seriously argued that HEA 1420 can pass that test, and it plainly cannot.  Just as in *NextEra Energy Cap. Holdings, Inc. v. Jackson*, 756 F. Supp. 3d 428 (W.D. Tex. 2024), "the legal issue of whether [HEA 1420] can satisfy strict scrutiny can be resolved by reference to the pleadings, judicially noticed facts, and common sense," and to the undisputed facts in Plaintiffs' summary-judgment papers.  *Id.* at 452-53.  These materials make crystal clear that HEA 1420 advances no "legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  *Id.*

**C.      Defendants' Other Efforts To Avoid Commerce Clause Scrutiny Fail.**

**1.      Congress did not authorize HEA 1420's blatant discrimination.**

Although "Congress may authorize the States to engage in regulation that the Commerce Clause would otherwise forbid," such an authorization requires "congressional direction" that is "unmistakably clear."  *Maine v. Taylor*, 477 U.S. 131, 138-39 (1986).  The Federal Power Act ("FPA") contains no statement authorizing states to discriminate against interstate commerce—let alone an "unmistakably clear" one.  This is not an open question:  The Supreme Court has *twice* held that the very same provision of the FPA that Defendants cite, 16 U.S.C. §824(b)(1), does not "alter the limits of state power otherwise imposed by the Commerce Clause."  *Wyoming*, 502 U.S. at 458 (quoting *New Eng. Power Co. v. New Hampshire*, 455 U.S. 331, 341 (1982)).  It just gives FERC "jurisdiction over all facilities for [the] transmission or sale of electric energy" while preserving states' authority "over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce."  16 U.S.C. §824(b)(1).  None of that authorizes states to enact laws that discriminate

against interstate commerce, much less empowers FERC to authorize such discrimination. Because Congress has not given states "the right to choose whether to opt into" a protectionist scheme with respect to interstate transmission facilities, HEA 1420 is subject to strict scrutiny under the Commerce Clause. *Contra* Incumbents' Br.4.

Even if Congress had given FERC power to authorize discriminatory state laws, FERC has not even purported to exercise it. Order No. 1000 does not "*require*[] ISOs" to "honor state ROFRs," as Incumbents claim. *Contra* Incumbents' Br.12. It merely declines to "*prohibit* [ISOs] from recognizing state and local laws and regulations as a threshold issue," to save them the trouble of soliciting and analyzing bids for projects that "ultimately must be assigned to the incumbent" under state law. *Midwest Indep. Transmission Sys. Operator, Inc*., 147 FERC ¶61,127, at ¶¶149-50 (2014) (emphasis added). In allowing MISO to adopt a tariff provision requiring compliance with "Applicable" state laws, FERC took no position on "the constitutionality of any particular state right-of-first-refusal law." *Midwest Indep. Transmission Sys. Operator, Inc*., 150 FERC ¶61,037, ¶61,195 (2015) (Bay, Commissioner, concurring). Indeed, in this very litigation, FERC reaffirmed that it has *never* "taken a position on the constitutionality of state rights of first refusal laws." CA7.Dkt.76 at 11. The notion that FERC "authorized States to use rights of first refusal" to squelch out-of-state competition, Incumbents' Br.1, has been squarely refuted by FERC itself.

Defendants further err in attempting to analogize this case to *White v. Massachusetts Council of Construction Employees, Inc.*, 460 U.S. 204 (1983) and *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130 (1982). *See* Incumbents' Br.15. *White* invoked the market-participant exception to Commerce Clause scrutiny to uphold a city's preference for local workers in projects funded by federal and city sources. 460 U.S. at 206-13. Just one year after *White* was decided, the Supreme Court relied on *New England Power* to reaffirm that only "a clear expression of

18

approval by Congress" can authorize state or local discrimination against interstate commerce. *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 90-92 (1984). In the process, the Court rejected the same argument that Defendants make here—i.e., that *White* stands for the proposition that Congress may *implicitly* approve a local burden on interstate commerce. *Id.* at 91 (emphasis added). *White* stands for no such thing: "If approval of state burdens on commerce could be implied from parallel federal policy, the Court [in *White*] would have had no reason to rely upon the market-participant doctrine to uphold" the local policy. *Id.*

*Merrion* is even further afield, as it involved a Commerce Clause challenge to *tribal* laws that the Court found sanctioned by Congress. As *Merrion* explains, the congressional-intent inquiry in tribal cases is very different than in cases like this one: "In contrast to when Congress acts with respect to the States, when Congress acts with respect to the Indian tribes, it generally does so pursuant to its authority under the Indian Commerce Clause, or by virtue of its superior position over the tribes, not pursuant to its authority under the Interstate Commerce Clause." 455 U.S. at 155 n.21. In a "sequel" to *Merrion*, the Court elaborated that "the Interstate Commerce and Indian Commerce Clauses have very different applications" because, "while the Interstate Commerce Clause is concerned with maintaining free trade among the States even in the absence of implementing federal legislation, the central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989). Cases involving the Indian Commerce Clause are therefore of little relevance to Commerce Clause cases like this one, which are "premised on a structural understanding of the unique role of the States in our constitutional system." *Id.*

Incumbents' contention that *Electric Power Supply Ass'n v. Star*, 904 F.3d 518 (7th Cir. 2018), "applies the same rule as *White* and *Merrion*," Incumbents' Br.11, is inexplicable. *Star*

involved a regulation of *intrastate* transmission—an Illinois law "subsidizing some of the state's nuclear generation facilities." 904 F.3d at 521. The Seventh Circuit held that even if the subsidy would "help some Illinois firms," it presented no Commerce Clause issue because §824(b)(1) authorizes states to "regulate local generation." *Id.* at 524-25. That holding has no relevance here because HEA 1420 applies only to *interstate* transmission lines approved by "a regional transmission organization" like PJM or MISO. Ind. Code §8-1-38-9; *accord* Incumbents' Br.5. What is more, *Star* reaffirms that §824(b)(1) "does *not* authorize *express* discrimination" against interstate commerce; the court merely held the *Pike* balancing test inapplicable to facially neutral regulations that may incidentally affect interstate commerce. 904 F.3d at 525 (emphases added). The decision thus lends zero support to Defendants' theory that §824(b)(1) and/or FERC somehow authorized HEA 1420's overt discrimination against out-of-state economic interests.

In sum, it is no mystery why Plaintiffs "invoke[d] *Wyoming*" and *New England Power*, Incumbents' Br.15, instead of seizing on a footnote in which the Seventh Circuit made a passing reference to *White* and *Merrion*. Plaintiffs rely on the former decisions because they squarely foreclose Defendants' FPA argument. States may not discriminate against interstate commerce absent a clear statement from Congress, and nothing in §824(b)(1) authorizes such discrimination.

### 2. *Tracy* does not shield HEA 1420 from Commerce Clause scrutiny.

Finally, Defendants return to the argument that *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), somehow shields HEA 1420 from Commerce Clause scrutiny. IURC Br.12-14; Incumbents' Br.17-22; ComEd Br.10. It does not. As the Fifth Circuit explained in *NextEra*, 48 F.4th at 318-20, the Ohio law at issue in *Tracy* was markedly different from right-of-first-refusal laws such as HEA 1420. It governed retail, not interstate transmission, and it applied equally to a captive and a non-captive market, so the decisive question was which market to give "controlling significance." 519 U.S. at 303. "It is easy to get lost in the weeds of *Tracy*," *LSP*, 131 F.4th at

20

595 (Scudder, J., dissenting), but this dual-versus-single-market dynamic amply distinguishes it. The Commerce Clause applies with full force to "laws regulating a single market where vertically integrated utilities undoubtedly compete alongside other transmission-only operators." *Id.* at 594 (Scudder, J., dissenting). Because HEA 1420 regulates a single market, "draw[ing] a straightforward distinction between entities that are direct competitors in the interstate market for electric transmission," it must satisfy ordinary Commerce Clause scrutiny. PI Op.19.

Defendants' efforts to show that "incumbent electric transmission owner[s]" are not "similarly situated" to non-incumbents, *see* Incumbents' Br.18-20, are unpersuasive. While incumbents "own the existing endpoint facilities to which new interstate transmission facilities will connect," Mot.18, that in no way impedes them from competing with non-incumbents for new regional transmission projects. As FERC has explained, to the extent incumbents have anything special to offer by virtue of their existing operations, they are "free to highlight [those] strengths" *in the competitive bidding process*. Order No. 1000, 136 FERC ¶61,051, at ¶260 (2011). Moreover, it is not relevant whether incumbents are better situated to "upgrade their own facilities," as such upgrades are already exempt from competitive bidding under other provisions in MISO's and PJM's tariffs. *See* Mot.5-6; Dkt.167-1 §VII.A.2; Dkt.167-2 §1.5.8(*l*).

Incumbents' argument that "vertically integrated utilities" are not similarly situated to transmission-only companies, *see* Incumbents' Br.18-19, 22, is likewise unavailing. For one thing, HEA 1420 does not even draw that distinction; as ComEd Indiana points out, the statute "favors not just incumbents that are 'vertically integrated utilities,' but also transmission-only incumbents 'like Republic' (and indeed, like ComEd Indiana)." ComEd Br.12 (quoting PI Op.19). More fundamentally, Incumbents' contention elides the critical fact on which *Tracy* rests: "The natural gas companies [in *Tracy*] primarily operated in two different markets (one captive, one

21

competitive) and the challenged law regulated both." *LSP*, 131 F.4th at 594 (Scudder, J., dissenting); *see NextEra*, 48 F.4th at 319. If it were not clear enough from *Tracy* itself, the Supreme Court later explained that this fact was determinative. *See Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 582 n.16 (1997) (*Tracy* "premised its holding that the statute at issue was not facially discriminatory on the view that sellers of 'bundled' and 'unbundled' natural gas were principally competing in different markets"). HEA 1420, by contrast, *regulates only one, competitive market*, so it is irrelevant that some of HEA 1420's beneficiaries *also* participate in a separate, non-competitive market where there are "preexisting regulatory obligations" that HEA 1420 does not touch. *Contra* Incumbents' Br.18. And Incumbents do not (and could not) show that the viability of the "franchise model" for *intrastate retail* power requires the protectionist exclusion of competitors from the *interstate transmission* market.

The IURC raises similar arguments through its expert, Dr. Carl Peterson. But nothing in Dr. Peterson's discussion of Indiana utility regulation creates a genuine issue of material fact about the (un)constitutionality of HEA 1420's discrimination against interstate commerce. First, echoing Incumbents' tautological point that all ROFR recipients own the endpoints where new projects connect to the grid, Dr. Peterson notes that such incumbents "have existing networks that have natural economies with expansion projects." IURC Br.14. Again, that is an effort to *justify* HEA 1420's discrimination, not an effort to deny it—and it is a faulty one at that, as incumbents should have no trouble winning competitive processes if they are really better situated to build new projects. Second, Dr. Peterson advances the puzzling claim that the "electric transmission industry" is not a competitive market but instead "a natural monopoly." Dkt.201-2 ¶¶9-10. FERC concluded otherwise in Order No. 1000. To be sure, *retail* electricity markets often operate as a monopoly in which utilities serve captive consumers and prices are set by regulation rather than

market forces. *See* IURC Br.13-14. But the state's assertion that it is "virtually an economic necessity" for states to provide a monopoly for *retail* electricity, IURC Br.14, again elides the critical question of *what market* HEA 1420 regulates. As explained, HEA 1420 does not touch the *retail* market that, at least in Indiana, is subject to local monopolies. It regulates only the market for interstate transmission, where rates and charges are determined by FERC, not Indiana, *see* 16 U.S.C. §824d, and where Order 1000 specifically permits competition. Since there is no other market that could have "controlling significance," there is no reason to depart from well-established Commerce Clause doctrine. *LSP*, 131 F.4th at 594 (Scudder, J., dissenting).

## III. This Court Should Issue A Declaratory Judgment And A Permanent Injunction.

### A. A Declaratory Judgment and a Permanent Injunction Are Amply Warranted.

Plaintiffs readily satisfy all requirements for declaratory and permanent injunctive relief. *See* Mot.28. Declaratory relief is the usual remedy for constitutional violations, and this case presents none of the unusual circumstances in which "equitable considerations" might cut against issuing a declaratory judgment. *Cf. Green v. Mansour*, 474 U.S. 64, 72-73 (1985). Plaintiffs also satisfy all requirements for permanent injunctive relief. They have suffered and continue to suffer irreparable harm, and the equities and public interest tilt sharply in favor of issuing a final judgment to protect them and consumers from further harm. *See* PI Op.20.

There is absolutely no need for further briefing on remedies. *Contra* Incumbents' Br.30. Far from "slumber[ing] upon their rights," *id.*, Plaintiffs sued just eight days after MISO released its "final" portfolio for LRTP Tranche 2.1, which specified the start- and end-points of the first group of Indiana projects covered by HEA 1420. *See* Dkt.45-3 at 5. It was eminently reasonable for Plaintiffs to avoid potential ripeness issues by waiting to sue until the threat of injury was indisputably "imminent," PI Op.10. It takes considerable chutzpah, moreover, for Incumbents to make such an argument while their co-Defendants continue to claim that this dispute *still* is not

ripe.  Nor did Plaintiffs unreasonably delay in moving for partial summary judgment.  *Contra*

Incumbents' Br.30.  Although Plaintiffs wished to move for summary judgment back in March,

Defendants prevented them from doing so by obtaining a stay of "[a]ll proceedings and deadlines,"

Dkt.131.  Plaintiffs had to spend the next two months fighting that stay, *see* Dkt.132, Dkt.136,

Dkt.137, Dkt.148, Dkt.152, and then prepare a 40-page response to the three separate motions to

dismiss that Defendants filed notwithstanding the stay they had procured, Dkt.154, before

Plaintiffs could finally seek partial summary judgment, Dkt.164.  In short, the equities

overwhelmingly favor Plaintiffs.  Further briefing would waste this Court's resources and prolong

Plaintiffs' exposure to HEA 1420's unconstitutional ban on competition.  That result may further

Incumbents' interests, but it does not further Plaintiffs' or the public's in the slightest.

### B.   The Court Should Reject the IURC's Request for Additional Time to Conduct Discovery.

There is no reason to "defer consideration of Plaintiffs' motion until the close of discovery,"

IURC Br.27-30, and there are several good reasons not to.  For starters, the IURC's invocation of

Rule 56(d) in their response brief "flout[s] Local Rule 7-1," which "plainly instruct[s] that 'a

motion must not be contained within a brief, response, or reply to a previously filed motion.'"

*Coomes v. Republic Airways Inc.*, 2021 WL 1165183, at *16-17 (S.D. Ind. Mar. 26, 2021) (Pratt,

C.J.).  The IURC's failure to comply with Rule 7-1 is particularly inexcusable since they had *more*

*than three months* to file a proper Rule 56(d) motion after Plaintiffs moved for partial summary

judgment.  Moreover, the IURC's request improperly seeks to relitigate the Court's prior orders

expressly permitting Plaintiffs to seek partial summary judgment "notwithstanding the discovery

stay" and requiring Defendants to respond to that motion.  Dkt.179 at 2; *see also* Dkt.153.

In any event, the IURC's plea for further discovery is meritless.  To meet its burden under

Rule 56(d), the movant "must show good cause for the discovery delays, that the specific discovery

is necessary to prepare a summary judgment response and that the additional discovery will give rise to a genuine issue of material fact." *White v. Decker*, 2025 WL 2625313, at *11 (S.D. Ind. Sept. 11, 2025) (Pratt, J.). The IURC fails to establish any of these requirements. First, the IURC has not shown good cause for failing to seek discovery from Plaintiffs at any time over the past eight months. Defendants have been on notice of Plaintiffs' plan to seek summary judgment without further discovery since at least March, *see* Dkt.130 at 2, and they cannot reasonably complain about being "unable to conduct discovery" when *they* are the ones who have kept discovery stayed over Plaintiffs' repeated objections. Second, the IURC has not identified any "specific discovery" that "is necessary to prepare a summary judgment response," *Decker*, 2025 WL 2625313, at *11. They instead gesture toward broad categories of discovery, Dkt.201-3 ¶¶11-12, even as they *have already prepared* a full-length response. In all events, the IURC has not carried its burden to show that additional discovery will give rise to a genuine issue of material fact. No amount of discovery could alter the reality that Plaintiffs have established Article III standing, *see supra* pp.3-7, and that HEA 1420 impermissibly discriminates against interstate commerce, *see supra* pp.7-17. Rule 56(d) "requires more than a fond hope that more fishing might net some good evidence." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019).

## CONCLUSION

The Court should grant Plaintiffs' motion for partial summary judgment, issue a declaratory judgment that HEA1420 violates the Commerce Clause, permanently enjoin the IURC from giving effect to HEA 1420, and permanently enjoin Incumbents and ComEd Indiana from exercising rights of first refusal under HEA 1420.

Respectfully submitted,

s/Erin E. Murphy

TODD A. RICHARDSON
JAMES E. ZOCCOLA
THOMAS JONES
LEWIS KAPPES
One American Square
Suite 2500
Indianapolis, IN 46282
(317) 639-1210

PAUL D. CLEMENT*
ERIN E. MURPHY*
MATTHEW D. ROWEN*
JEFFREY C. THALHOFER*
JOSEPH J. DEMOTT*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Admitted pro hac vice

Counsel for Plaintiffs

November 14, 2025